UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOYLYN D. GABBARD,<br><br>         Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>         Defendant. | Case No.  C07-5124RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 23, 2007 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

## INTRODUCTION

Plaintiff, Joylyn D. Gabbard, was born in 1964, and he is currently 43 years old.  She has a high school education, and she has not worked since December 2003.  Plaintiff has past experience working in a restaurant, at a bank, as an office receptionist, as an insurance claims assistant, and answering telephones.   Plaintiff claims she is unable to work due to bipolar illness and severe depression.

Plaintiff protectively filed applications for Social Security and Supplemental Security Income disability benefits on April 21, 2004, and June 1, 2004, alleging that she has been disabled under the Social Security Act since December 23, 2003. (Tr. 50-52, 353-56). Her applications were denied initially

and on reconsideration. (Tr. 36-39, 42-43). Ms. Gabbard filed a hearing request, and a hearing was held before Administrative Law Judge Edward Nichols (hereinafter, "ALJ") on May 5, 2006. (Tr. 381-424). On July 31, 2006, the ALJ issued a decision in which he found that Ms. Gabbard was not disabled. (Tr. 11-25). Ms. Gabbard requested review by the Appeals Council which, on January 16, 2007, denied her request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (Tr. 5-8).

On March 15, 2007, Plaintiff submitted the instant Complaint with the court challenging the denial of her applications for benefits, seeking judicial review.  Specifically, plaintiff contends: (1) the ALJ failed to give appropriate weight to the opinion of her treating and examining physicians; (2) the ALJ failed to properly consider Plaintiff's testimony regarding her symptoms and limitations; (3) the ALJ erred in finding that claimant's impairments did not meet or equal a Listing; (4) the ALJ improperly determined Plaintiff's residual functional capacity; and (5) the Commissioner failed to meet the burden of showing that Plaintiff can perform any work in the national economy.  Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions were properly supported by substantial evidence.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

This case turns on two threshold issues – the ALJ's assessment of Plaintiff's credibility and the ALJ's review of the medical evidence.  These issues are discussed below.   Because the undersigned finds no error in the ALJ's assessment of Plaintiff's credibility or his assessment of the medical evidence, the court recommends affirmation of the administrative decision.  The additional issues raised by Plaintiff are

premised on either of these two alleged errors and as such are not discussed.

A.  *THE ALJ PROPERLY WEIGHED AND EVALUATED PLAINTIFF'S CREDIBILITY*

Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints.  Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'"  Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)).  An ALJ may reject a claimant's subjective complaints, if the claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) However, as further explained in Fair v. Bowen, *supra*, and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996), the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferrable to a work environment where it might be impossible to rest periodically.  Similarly, the ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony s/he rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ oncluded Ms. Gabbard has no exertional limitations and due to low stress tolerance and difficulty with concentration, he found she is limited to simple repetitive tasks in a low stress environment with limited public contact.  Explaining this finding, the ALJ addressed Plaintiffs testimony and allegations of more severe limitations.  He wrote:

> In making this determination, I have considered all medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations (20 CFR §§ 404.1527 and 416.927; Social Security Rulings 96-2p, 96-5p, and 96-6p).  This includes reports by the DDS evaluators and other treating, examining, and non-examining medical sources.  I have also considered the claimant's complaints and allegations regarding her ability to work.  This includes all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929; Social Security Rulings 96-3p, 96-4p, and 96-7p.  After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.  An Administrative Law Judge can reject the claimant's testimony about the severity of her symptoms by offering specific, clear, and convincing reasons (Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996).

The overall medical evidence of record does not support the claimant's allegations of debilitating symptoms or limitations (Social Security Rulings 96-3p and 96-4p). Her subjective pain complaints and allegations regarding her capability to perform activities of daily living and work-related activities are out of proportion to any physical findings and without clinical or laboratory findings. Despite her reports of relatively serious problems, treating and examining physicians found no or only mild objective findings and observed no major difficulties with functioning during the examinations. She has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present "constantly" or all of the time.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Her treatment has been essentially routine and/or conservative in nature and the records reveal that this treatment has been generally successful in controlling her objective symptoms. She has been prescribed and has taken appropriate medications for her impairments but the medical records reveal that the medications have been effective in controlling her symptoms (Exhibits 11E, 7F, 9F, 18F, and 19F). The use of medication does not suggest the presence of an impairment which is more limiting than found in this decision. Given the improvement she experienced once she began taking Lithium, she stated "the Lithium has been 'a miracle' for her" and her counseling sessions were accordingly ceased due to improvement (Exhibit 7F, p.2). The treatment records reveal that with the medication management and counseling, she was able to manage her bipolar disorder by learning triggers and developing techniques for dealing with her symptoms (Exhibits 11E, 7F, 9F, 18F, and 19F). She reported that she was feeling emotionally stable, stating that she was "feeling good" and "doing okay." She also reported that she was making progress towards increasing her social network and making positive transitions in her life.

The claimant's activities of daily living and social functioning are not limited to the extent one would expect given her complaints of disabling symptoms and limitations. She lives with her parents, which she stated is somewhat stressful for her, but she is able to perform her own self-care and be relatively productive in her activities of daily living. She watches television and movies, goes to the library to read, plays with her dog, cooks herself basic meals, handles her own finances, occasionally goes to church, drives a car, goes shopping, attends weekly "Pebbles in the Pond" seminars/classes, walks regularly (twice a week) with friends and neighbors, goes to the YMCA several times a week for fitness program, and has added Pilates to her exercise schedule as of March 2006 (testimony and Exhibits 3E, 7F, pp. 6-19, 8F, p.1, 16F, pp. 1 and 4, and 19F). She admitted that getting out of the house was very beneficial for her (Exhibit 7F, p. 13). Also, despite the allegations of symptoms and limitations preventing all work, the record reflects that the claimant went on a vacation to Texas since the alleged onset date (Exhibits 7F, pp. 2-6, 16F, p.4, and 18F, p. 10). Although a vacation and a disability are not necessarily mutually exclusive, her decision to go on a vacation suggests that her alleged symptoms and limitations may have been overstated. Such activities, while not directly in correlation with work duties, do indicate a capacity to engage in exertional activities consistent with assessed abilities (*Rollins v.* Massanari, 261 F.3d 853 (9th Cir. 2001, Ferguson, J. Dissenting; *Morgan v. Commissioner*, 169 F.3d 595 (9th cir. 1999). It is apparent that the claimant is engaging in a normal level of daily activity, social interaction, and activities that require concentration.

There are other factors which undermine the claimant's credibility. Despite improvement in her symptoms and activities, she admitted that "getting SSI will help her with having less stress" (Exhibits 19F, p. 49). She also did not follow up on homework/goal-planning to the point that her counselor opined, "client continues to be waiting for disability" (Exhibit 19F, pp. 3 and 6). Given this fact, her financial incentive to over-report or exaggerate her difficulties is high (*Tidwell v. Apfel*, 161 F.3d 599 (9th Cir. 1998)). Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. She demonstrated

REPORT AND RECOMMENDATION
Page - 4

>excellent memory yet she could not give a good reason whey she could not work, vacillating between her poor history, unspecified "problems" at work, and her physical health.  However, there is no objective medial evidence of any physical problems other than transient, general health concerns (Exhibits 2F, 4F, and 16F).  While the hearing was short-lived and cannot be considered a conclusive indicator of her symptoms on a day-to-day basis, the apparent lack of difficulty during the hearing is given some weight in reaching the conclusion regarding the credibility of the claimant's allegations and residual functional capacity.  It is emphasized that my observations at the hearing are only some among many being relied on in reaching a conclusion regarding the claimant's credibility.  For all of the reasons stated above, I find the claimant not entirely credible and that the symptoms she describes are not severe enough to preclude all employment (Social Security Rulings 96-3p and 96-7p).

(Tr. 19-21)

After reviewing the ALJ's decision and the administrative record, it is clear the ALJ has provided sufficient evidence to discredit the Plaintiff's allegations of total disability.  The record properly supports the ALJ's analysis of Plaintiff's treatment record, her daily activities, the ALJ's observations, and lack of medical evidence supporting more significant limitations (discussed more fully below).   The court notes it is the ALJ who is responsible for determining credibility, Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999), and the ALJ may make first-hand observations during a hearing as a factor in assessing a claimant's credibility, Morgan v. Commissioner of SSA, 169 F.3d 595, 599-600 (9th Cir. 1999).  Accordingly, the ALJ did not err when he evaluated and discredited Plaintiff's testimony and allegations regarding the severity of her limitations.

*B. THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from

REPORT AND RECOMMENDATION
Page - 5

1  the claimant that conflicted with the treating physician's opinion.  "In evaluating the evidence, the
2  reviewing court must look at the record as a whole, weighing both the evidence that supports and detracts
3  from the Secretary's conclusion. *Gonzalez*, 914 F.2d at 1200. The trier of fact and not the reviewing court
4  must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not
5  substitute its judgment for that of the ALJ. *Richardson*, 402 U.S. at 400, 91 S.Ct. at 1426-27; *Allen*, 749
6  F.2d at 579."  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

7      Here, the ALJ reviewed the medical evidence of record as a whole and concluded at step-two in
8  the administrative evaluation process that plaintiff had the following severe impairments: bipolar disorder
9  and obesity. (Tr. 18).  However, the ALJ further concluded that Plaintiff's impairments did not prevent
10 her from performing work that exists in significant numbers in the national economy (Tr. 24-25).
11 Specifically, the ALJ found Plaintiff's limitations supported by the medical evidence were limited to the
12 following non-exertional limitations: low stress environment with limited public contact (Tr. 19).  The
13 ALJ, based on testimony of a vocational expert, concluded Ms. Gabbard is capable of performing work as
14 a cleaner/housekeeper or  small products assembler (Tr. 24).

15     Plaintiff argues the ALJ failed to properly assess her limitations.  She argues the medical opinions
16 support additional limitations not adopted by the ALJ.   Specifically, Plaintiff argues the medical opinions
17 support a limitation reflecting that she would miss at least two days per month due to her limited stress
18 tolerance and that she is "markedly limited in her ability to interact appropriately with the general public
19 and moderately limited in her ability to perform activities within a schedule, maintain regular attendance,
20 and be punctual within customary tolerances, complete a normal workday without interruptions from
21 psychologically based symptoms and to perform at a consistent pace without an unreasonable number and
22 length of rest periods, respond appropriately to changes in the work setting, and set realistic goals or make
23 plans independently of others"  (Plaintiff's Opening Brief at 22).

24     Plaintiff boldly argues, "Every treating and examining source opined that Ms. Gabbard has more
25 limitations than found by the ALJ in his decision" (Plaintiff's Opening Brief at 10), and "It was error for
26 the ALJ to fail to fully credit the opinions of Dr. Cavenee, Dr. Banken, Dr. Cosgrove, Dr. Thurman, Ms.
27 Schmoker, Ms. Patzke, and Ms. Potter" (Plaintiff's Opening Brief at 15).   After reviewing the ALJ's
28 decision and the administrative record, the undersigned is not persuaded by Plaintiff's contentions.

First, the court notes that the ALJ accurately and chronologically summarized all of the relevant medical evidence in his decision (Tr. 15-18).  The ALJ, in the context of determining Plaintiff's limitations and in light of his credibility findings, explained the medical evidence as a whole (Tr. 19-23). The ALJ clearly relied on the treatment records of Dr. Cosgrove and the reviewing DDS physicians, Dr. Thomas Clifford and Dr. Anita Peterson (Tr. 253-270).  The ALJ stated:

> The residual functional capacity conclusions reached by the DDS evaluators also supported a finding of "not disabled."  Although DDS physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of reasons to reach similar conclusions (as explained throughout this decision).  The DDS evaluators determined that despite her bipolar disorder, the claimant could understand, remember, and carry out simple repetitive tasks in a low stress work setting with no public contact and supportive supervisors and co-workers and supervisors (Exhibit 12F).  Pursuant to Social Security Ruling 96-6p, I will adopt the limitations assessed by the DDS evaluators.  The determination is consistent with the longitudinal treatment evidence as a whole and the evaluation by Dr. Cosgrove (Exhibit 8F).  She assessed a GAF score of 55, which indicates only moderate symptoms or moderate difficulties in social or occupational functioning.  She noted that the claimant was clearly having a positive response to her present psychotropic medications and opined that there was an excellent likelihood of returning to full-time work.  The only limitation she assessed was that the claimant needed [a] low stress employment, which does not reflect complete and total disability.  Dr. Cosgrove's conclusions support the synthesis reached by the DDS evaluators.

(Tr. 23).

On August 12, 2004, Dr. Cosgrove examined and evaluated Plaintiff's mental health on referral of the Social Security Administration.   According to her evaluation report (Tr. 227-232), Dr. Cosgrove reviewed medical records from Valley Medical Center, Dr. Cavenee, and progress notes from January 2004.  Dr. Cosgrove diagnosed Ms. Gabbard with Bipolar II Disorder, present episode euthymic; and Posttraumatic stress disorder, bipolar type, chronic, moderate. (Tr. 231).   Dr. Cosgrove prognosis was very positive, stating:

> The claimant's prognosis is good.  The claimant is clearly having a positive response to her present psychotropic medications of lithium and Risperdal.  She has been through multiple other medication trials without success.
>
> Provided she continues with her psychiatric medication management and psychotherapy which she has every intention of doing and verbalizes this, the likelihood that she could return to full-time work would be considered excellent within the next 12-24 months.  I would also recommend a referral to the Department of Vocational Rehabilitation for assistance with finding employment and perhaps retraining.  One of the precautions with bipolar II disorder is that the claimant's ability to handle what would be considered "typical" occupational stress is often overwhelming for patients and can produce depressive and/or hypomanic episodes.  The claimant will need to be in a low-stress employment environment in order to maintain her stability despite her excellent

compliance with her treatment.

(Tr. 231-232).

Dr. Cosgrove's analysis in August 2004, is consistent with the assessments of reviewing physicians, Dr. Peterson and Dr. Clifford, from the same time period and later affirmed in February 2005 (Tr. 253-270). They noted that evidence did not support disability based on any Listings, and required a Mental Residual Functional Capacity ("MRFC') assessment (Tr. 265). The MRFC was completed and reviewed on the same dates (September 1, 2004 and February 25, 2005) (Tr. 267-270). Dr. Peterson and Dr. Clifford agreed that Ms. Gabbard was markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to: (i) carry out detailed instructions, (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (iii) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (iv) respond appropriately to changes in the work setting, and (v) set realistic goals or make plans independently of others. Elaborating on these capacity findings Dr. Peterson commented:

> [Claimant's] prognosis to be quite good in terms of her positive response to present psychotropic meds of lithium and risperdal. He opines that, as long as clmt adheres to her intention to continue the necessary tx for ongoing stabilization, she should have an excellent probability of returning to full-time work. CE DR feels it prudent that even when clmt is ready to RTW, that she enter into low-stress employment. CE Drs opinions, which would appear to be well supported by objective data gleaned from CE interview/MSE, are inconsistent with the clmt's alleged degree of disability. Moreover some of the clmt's own statements are internally inconsistent; e.g., although clmt alleges quite severe sx, she appears rather euthymic to CE Dr; she additionally alleges severe anhedonia, but there is not any evidence in file to support this assertion. Clmt is therefore not found to be wholly credible in re allegations of disability.

(Tr. 270)

The opinions of Dr. Cosgrove, an examining physician, and Dr. Petersen and Dr. Clifford, reviewing physicians, provide substantial evidence to support the ALJ's determination. The ALJ concluded Ms. Gabbard's limitations included a low stress environment with limited public contact. At the administrative hearing the ALJ posed the following hypothetical, fully describing her limitations:

> Okay. Let's assume we have a younger individual with a high school education, and past work as described. Her biggest problem here seems to be the bipolar disorder, be it one or two, and obesity is mentioned in the file as well. Exertionally I don't think there's any real limits, realistically none. Nonexertionally, its kind of hard to get a handle on these, but I think low stress. I don't know how you quantify stress, but on a scale of one to ten,

> probably no more than a five. And I think public and coworkers might be an issue. I mean, short superficial contact might be okay, but certainly not work with part of a team, that type of stuff. And there might be some concentration issues at times, certainly not all the time, but at times, so straightforward, repetitive work, things you do over and over so it's going to enter your thoughts and continue to do it over and over. So any past work for that?

(Tr. 397-398). In response to the hypothetical, the vocational expert explained that Ms. Gabbard would be able to perform works as a house cleaner, which is light, unskilled, generally repetitive work and does not involve any significant contact with the public (Tr. 398-399). The substantial medical evidence relied upon by the ALJ properly supports the hypothetical and the finding that Plaintiff is capable of performing work as a house cleaner.

Plaintiff argues the ALJ improperly rejected medical opinions that supported more severe limitations, i.e., Dr. Cavenee, Dr. Banken, Dr. Thurman. The ALJ discounted or discredited the opinions for legitimate reasons. For example, the ALJ did not adopt the opinions because, in part, the ALJ noted that the assessments were made in unexplained "check-the box" forms (Tr. 17, 22). In addition, the ALJ noted that the medical treatment by each of the physicians was very limited and/or very brief (Tr. 22). As noted above, the ALJ is entitled to resolve conflicts in the medical evidence. Here, the ALJ properly weighed the evidence, and determined Plaintiff's limitations, relying on his assessment of Plaintiff's credibility, the two reviewing physicians and an examining physicians opinion.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **November 23, 2007**, as noted in the caption.

DATED this 31st day of October, 2007.

                                */s/ J. Kelley Arnold*
                                J. Kelley Arnold
                                U.S. Magistrate Judge